| | |
|---|---|
| 1 | **WO** |
| 2 | **NOT FOR PUBLICATION** |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Alicia Jimenez and Argimiro Gonzales, husband and wife; and C.G., a minor, | ) ) ) | No. CV-10-513-PHX-GMS |
| Plaintiffs, | ) ) | **ORDER** |
| vs. | ) ) ) | |
| United States of America, | ) ) | |
| Defendant. | ) ) ) | |

Pending before this Court are: (1) Plaintiffs Motion to Set Aside Forfeiture (Dkt. # 1), (2) Defendant's First Motion to Strike a Portion of Plaintiff's Reply (Dkt. # 13), and (3) Plaintiff's Response to Defendant's Motion to Strike a Portion of Plaintiff's Reply and Motion For Leave To Amend Plaintiff's Reply (Dkt. # 14).

The parties submit affidavits and offers of proof, and apparently desire that the Court decide this matter without an evidentiary hearing. The parties do not disagree on the facts that are essential to the Court's determination of this issue. In light of those facts, the Court determines that the government did not take "reasonable steps" under all the circumstances to provide Alicia Jimenez and Argimiro Gonzales with notice of the nonjudicial forfeiture of the property seized from them. That property includes a total of $10,067 in United States currency and the Chevrolet Tahoe (also referred to as a 1995 or 1996 Chevy Blazer or Cadillac Escalade) in which Ms. Jimenez and her son were traveling. The Court further

1 determines that, because they were not provided with such notice, Plaintiffs did not know or have reason to know the facts necessary to allow them to file a timely claim challenging the forfeiture. The Court, therefore, sets aside the forfeiture.

**BACKGROUND**

The cash and the car were seized from Ms. Jimenez on August 22, 2009, at the San Luis border station, when she was arrested for violating 31 U.S.C. § 5332 (2009). There is apparently no dispute that Ms. Jimenez provided the U.S. Immigration and Customs Enforcement ("ICE") with her actual residence address – 1373 San Francisco Street, San Luis, Arizona. For purposes of filing a criminal complaint against Ms. Jimenez, Special Agent Victor Martinez swore out a probable cause statement before the Court. As it pertains to whether the United States took reasonable steps to provide notice of the forfeiture to Ms. Jimenez and her husband, Argimiro Gonzalez, Agent Martinez avows in the probable cause statement that he spoke with Ms. Jimenez after she had been interviewed by other ICE officers on the day she was apprehended. In his conversation with Ms. Jimenez, she identified the property as belonging to her husband Argimiro. It is not clear from the probable cause statement whether Ms. Jimenez provided her husband's last name, or whether Agent Martinez simply assumed that Argimiro's last name was Jimenez[1].

On that same date, Ms. Jimenez was interviewed by pretrial services officer Elena Hernandez for purposes of making a determination concerning her pretrial release after her arrest. In that interview, as is allegedly confirmed by the Pretrial Services Report, Ms. Jimenez informed the government that she and Argimiro Gonzalez owned a store located at

---

[1] The United States moves to strike two paragraphs in Plaintiffs' Reply in which Plaintiffs argue that Ms. Jimenez identified her husband to Agent Martinez not simply as "Argimiro" but as "Argimiro Gonzalez". The Court grants the United States' motion in part. While the Court will not strike the paragraphs in their totality, the Court will strike any reference in those paragraphs to "Gonzalez" to the extent that Plaintiffs attempt to argue that the records reflect that Ms. Jimenez identified the last name of her husband to Agent Martinez or to anyone else at ICE on the date of her arrest. In light of this ruling Plaintiffs' Motion For Leave To Amend Their Reply (Dkt. # 14) is denied as moot.

552 Archibald Street in San Luis, Arizona. Ms. Jimenez further provided the same residential address to pretrial services that she had previously provided to ICE. Plaintiffs allege that the pretrial services report containing this information was at all times in the possession of the Customs and Border Patrol. The United States denies that ICE had reasonable access to this report.

On August 28, 2009, the United States decided not to pursue criminal charges against Ms. Jimenez. Ms. Jimenez's attorney thereafter telephoned the Assistant United States Attorney, who had been charged with her criminal prosecution, to inquire about the release of the currency and the automobile seized by the United States to Ms. Jimenez. On August 31, the Assistant United States Attorney replied to Ms. Jimenez's counsel that Customs and Border Patrol had informed him that "they do intend to seize the assets."

The staff of Carmen P. Dominguez at the Office of Fines, Penalties & Forfeitures in Nogales, Arizona had the responsibility to provide service of the forfeiture proceeding to the Plaintiffs. Nogales is located several hundred miles east of San Luis. Workers in the Nogales Office were not aware that the postal service does not provide residential mail service in the city of San Luis. Thus, the Office mailed notice to Ms. Jimenez at her residence address – 1373 San Francisco Street, San Luis, Arizona 85349. On September 9, 2009 the mail was returned to the Office as "Not Deliverable as Addressed," despite the fact that it was addressed to the accurate residence address of Ms. Jimenez because the postal service does not provide residential delivery in San Luis. Office employees then searched the United States Postal Service web site to determine whether there was a mailing address for Alicia Jimenez in San Luis, Arizona. They found none.

The Office of Fines Penalties & Forfeitures nevertheless remailed the notice to the same residence address on October 8, 2009. The second notice was also returned as undeliverable. The Office thus presumed that "the address which was given was a fake or bad address." The Office published a notice of forfeiture in the Arizona Daily Star, a Tucson, Arizona newspaper that has no significant circulation in San Luis, Arizona. Otherwise, the Office took no further steps to provide actual written notice to Ms. Jimenez

and Argimiro Gonzalez of the pending forfeiture.

On February 2, 2010, Counsel for Plaintiffs contacted the Assistant United States Attorney. Counsel indicated that Plaintiffs had received no notice of forfeiture and demanded return of the forfeited property due to the United States's failure to take action to forfeit the property in the limited time period provided by the statute. When Plaintiffs determined that the property had already been forfeited, they filed this motion to set aside the forfeiture pursuant to 18 U.S.C. § 983(e).

**DISCUSSION**

Title 18 U.S.C. § 983(e) provides that the Petitioners may move to set aside a declaration of forfeiture with respect to their interest in property if:

> (A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and
>
> (B) the moving party did not know or have reason to know of the seizure with sufficient time to file a timely claim.

All parties acknowledge that the petitioners never received actual knowledge of the initiation of the forfeiture procedure. Actual notice, however, is not necessary so long as the government took reasonably-calculated steps to provide those with an interest in property with actual notice. *Dusenbery v. United States*, 534 U.S. 161, 170–71 (2002) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)). In determining whether reasonable steps have been taken, "[r]ather than focusing on proof of actual notice 'the jurisprudence of constitutional notice appropriately focuses not on what actually occurred, but rather on the procedures that were in place when notice was attempted.'" *U.S. v. Huggins*, 607 F. Supp. 2d 660, 668 (D. Del. 2009) (quoting *United States v. One Toshiba Color Television,* 213 F.3d 147, 149 (3d Cir. 2000)).

In *Huggins,* an inmate moved to set aside a forfeiture of $118,000 in cash contending that he had not received notice of the forfeiture proceedings while he was incarcerated. The Court granted summary judgment for the government on the notice issue, however, without determining whether the inmate received actual notice. The Court did so because it

1 | determined that the correctional facility at which the inmate/plaintiff was housed had
2 | reasonable procedures assuring that inmates incarcerated at the facility would receive all mail
3 | sent to them. The *Huggins* Court, analyzing "the procedures that were in place when notice
4 | was attempted," determined that it was reasonable for the United States to rely on those
5 | procedures in correctly mailing notice of the forfeiture proceedings to the inmate at the
6 | facility.

7 | Here, unlike *Huggins*, "the procedures that were in place when notice was attempted,"
8 | would not, in any event, have resulted in service of the notice to the Plaintiffs by mail. The
9 | employees of the Office of Fines, Penalties & Forfeitures in Nogales were in charge of
10 | providing the Plaintiffs with written notice of forfeiture. The employees of the Office in
11 | Nogales did not know, and were not informed, that the United States Postal Service does not
12 | provide residential mail delivery in San Luis. They thus mailed the notice of forfeiture to the
13 | Plaintiffs' residential address, which would not, in any event, have resulted in service of the
14 | notice on Ms. Jimenez. When the procedures in place by the United States Postal Service
15 | would not have permitted delivery of notice to the Plaintiffs residential address, it was not
16 | reasonable to rely on those procedures to accomplish notice. *See also Collette v. United*
17 | *States*, 247 F. App'x 87, 88–89 (9th Cir. 2007) (holding that notice was insufficient because
18 | the notice of forfeiture was returned as undeliverable and the government "failed to make any
19 | further efforts to deliver notices it knew had not reached" the property-owner); *Garcia v.*
20 | *Meza*, 235 F.3d 287 (7th Cir. 2000) (holding that forfeiture notice was insufficient where the
21 | notice was returned as undeliverable and the government failed to serve the claimant or to
22 | respond to the claimant's inquiries); *Aero-Medical, Inc. v. United States*, 23 F.3d 328,
23 | 330–31 (10th Cir. 1994) (requiring the government to make further attempts to serve notice
24 | of a forfeiture where the government becomes aware that attempts to serve via mail have
25 | failed).
26 | / / /
27 |
28 |

When the notice was returned to the Office as undeliverable the second time, again because the employees of the Office were unaware that there was no residential delivery in San Luis, the Office assumed that the address provided was false. The United States provides no evidence that it made any further attempt to identify Ms. Jimenez's husband, Argimiro Gonzalez, who was identified as the property owner, or to further determine a way to provide actual notice to Ms. Jimenez. As the United States acknowledges, Ms. Jimenez and Argimiro Gonzalez do live at the residence address provided to ICE by Ms. Jimenez on the date of her arrest. Yet, the United States never attempted personal or alternative service at that address. Instead, the government proceeded and concluded administrative forfeiture proceedings without providing notice. These are not reasonable steps to provide notice under the circumstances.

The United States asserts that Ms. Jimenez should bear the burden of such a failure, because she knew that there was no residential mail delivery in San Luis, Arizona when she provided ICE agents with her residential address on the date of her arrest.

The government provides a supplemental affidavit by Agent Martinez, which was prepared more than eight months after the seizure. Agent Martinez states that "the purpose of obtaining this address from Customs and Border Protection Officers was to provide a mailing address for her to receive the notices regarding the administrative forfeiture action, and this fact was explained to her at the time the form was completed." Although Agent Martinez makes the above statement in his supplemental affidavit, it does not appear that he makes it based on personal knowledge. He does not testify that he personally explained to Ms. Jimenez that ICE desired her mailing address instead of her residence address, nor does he explain that ICE policy would dictate that officers specify that an address was needed to mail service of process. The Court, therefore, will give the Agent Martinez's statement no weight. *See* Fed. R. Civ. P. 56(e)(1) (requiring affidavits to be based on personal knowledge); *Casey v. Lewis,* 4 F.3d 1516, 1532 (9th Cir. 1993) (stating that affidavits must be made from personal knowledge reflected in the affidavit itself).

Even if Agent Martinez had sworn that he had personally provided such specific

1 instruction to Ms. Jimenez, it strikes the Court as less than a reasonable basis on which the
2 government can offload its responsibility to take reasonable steps to provide notice. The
3 government concedes that Ms. Jimenez provided ICE with her accurate residence address.
4 It nevertheless asserts that she is blameworthy because she either understood or should have
5 understood during the course of her arrest that, in light of the lack of residential mail delivery
6 in San Luis, ICE wanted her mailing address rather than her residence address. The
7 government does not explain how, if its agents expected Ms. Jimenez to provide them with
8 a mailing address, they accepted the address that she gave them, which was obviously a
9 residential address. Such an argument, in the estimation of the Court, does not provide the
10 United States with a reasonable excuse on which to argue Ms. Jimenez should bear the
11 responsibility for the United States' failure to provide the Plaintiffs with actual notice of
12 administrative forfeiture proceeding in this case.

13 According to the statute, however, the forfeiture still will not be set aside if the
14 Plaintiffs had "sufficient time to file a timely claim." While the Plaintiffs plainly had reason
15 to know of the seizure, they did not have the information required to allow them "sufficient
16 time to file a timely claim." As the *Huggins* court observed, "knowledge of seizure alone,
17 without any knowledge of pending forfeiture proceedings or procedures to challenge such
18 proceedings, did not satisfy due process requirements." 607 F. Supp.2d at 666. Because the
19 Plaintiffs here "did not receive any information on how to file a claim for the property or by
20 when a claim for the property needed to be filed," the fact alone that they were informed that
21 the Border Patrol intended to proceed with a seizure action, failed to provide the Plaintiffs
22 with the process they were due in this action. *See id.* at 667.

23 **IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Set Aside Forfeiture
24 (Dkt. #1) is **GRANTED**. The administrative forfeiture of the $10,067.00 seized from Alicia
25 Jimenez as well as the forfeiture of the vehicle in which she was driving, variously described
26 as a 1995 or 1996 Chevrolet Tahoe or Blazer or Cadillac Escalade, shall be set aside.

27 **IT IS FURTHER ORDERED** that the United States's Motion to Strike (Dkt. # 13)
28 is **GRANTED IN PART** as above specified, and that Plaintiffs' Motion For Leave To File

an Amended Reply (Dkt. # 14) is **DENIED** as moot.

DATED this 18th day of June, 2010.

_____
G. Murray Snow
United States District Judge